## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**ROBERT VEASEY,**                      :
                                     :
      **Plaintiff,**                  :
                                       :     **CIVIL ACTION FILE NO.**
**v.**                                  :     **1:06-CV-1909-AJB**
                                       :
**MICHAEL J. ASTRUE,[1]**               :
*Commissioner of Social*                :
*Security Administration,*              :
                                       :
      **Defendant.**                  :

## O R D E R   A N D   O P I N I O N[2]

Plaintiff Robert Veasey ("Plaintiff") brought this action pursuant to §§ 216(i), 223 and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

---

[1]     Michael J. Astrue, who became Commissioner of Social Security on February 12, 2007, is "automatically substituted" as Defendant.  FED. R. CIV. P. 25(d)(1).

[2]     The parties have consented to the exercise of jurisdiction by the undersigned pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73.  [Docs. 10, 11].  Therefore, this Order constitutes a final Order of the Court.

payments under the Social Security Act ("the Act").[3]  For the reasons stated below, the

undersigned **AFFIRMS** the Commissioner's decision.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB and SSI on June 22, 2002, alleging

disability commencing on May 20, 2002.   [Record (hereinafter "R") 219-21].

Plaintiff's application was denied initially and on reconsideration.  [R214-17, 34-37].

Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), [R32-

33], which was held on July 11, 2005.  [R225-47].  The ALJ issued a decision on

December 9, 2005, denying Plaintiff's claims on the grounds that he retained the

residual functional capacity ("RFC") to perform light work.  [R11-16].  Plaintiff then

sought review by the Appeals Council and, on May 31, 2006, the Appeals Council

---

[3]        Title II of the Social Security Act provides for federal disability insurance benefits.   42 U.S.C. § 401 *et seq*.   Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*., provides for supplemental security income benefits for the disabled.  The relevant law and regulations governing the determination of disability under a claim for DIB are nearly identical to those governing the determination under a claim for SSI.  *Davis v. Heckler*, 759 F.2d 432, 435 n.1 (5th Cir. 1985).  Although different statutes and regulations apply to each type of claim, in general, the legal standards to be applied are the same regardless of whether a claimant seeks DIB, to establish a "period of disability," or to recover SSI, which are not tied to the attainment of a particular period of insurance disability. *Id.*; *Baxter v. Schweiker*, 538 F.Supp. 343, 350 (N.D. Ga. 1982).  Therefore, to the extent that the Court cites to SSI cases, statutes or regulations, they are equally applicable to Plaintiff's DIB claims.

AO 72A
(Rev.8/8
2)

denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  [R4-6].

Plaintiff filed the instant action in this Court on August 3, 2006, seeking review of the Commissioner's decision.  *Robert Veasey v. JoAnne B. Barnhart,* Civil Action File No. 1:06-CV-1909.  [Doc. 2].  The answer and transcript were filed on March 27, 2006.  [Docs. 6-7].  The matter is now before the Court upon the administrative record, the parties' pleadings, briefs and oral argument, and is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.     STATEMENT OF FACTS

### A.     Factual Background

Plaintiff was born on December 13, 1955, and was a few weeks from 50 years old at the time of the administrative evidentiary hearing.  [R12].  He has a tenth grade education and  past relevant work as a brick mason and self-employed salesperson. [*Id.*].  Plaintiff alleges disability based on left hip replacement for vascular necrosis, right hip necrosis, diabetes mellitus, hypertension and hepatitis C.  [R12].

### B.     Medical Records

The medical evidence primarily is comprised of records from Grady Healthcare System's DeKalb Grady Clinic (hereinafter "the Clinic").

3

On October 6, 1993, a treating physician at the Clinic diagnosed Plaintiff with hypertension and low back pain.  [R174].  On June 8, 1995, Plaintiff returned to the Clinic, at which time the attending physician assessed high blood pressure, "well-controlled," alcoholic hepatitis, and anemia.  [R168].

On January 11, 1996, Plaintiff returned for a re-check of his blood pressure.  The treating physician noted that Plaintiff experienced high blood pressure, anemia, and alcoholic hepatitis, and that he had stopped drinking four months prior.  [R167].

On April 19, 1996, Plaintiff was diagnosed with diabetes, in addition to having high blood pressure and anemia.  [R166].  On October 9, 1996, the attending physician again assessed high blood pressure, diabetes, Hepatitis C[4] and a history of anemia. [R162].  Plaintiff received a similar diagnosis on April 27, 1998.  [*See* R155].

On November 13, 1998, Plaintiff was seen for complaints of blurred vision. [R151].  Plaintiff's blood sugar was noted as "out of control," but his hypertension was "adequately controlled."  [*Id.*].  On November 23, 1998, March 22, 1999, and November 13, 1999, Plaintiff received followup care at the Clinic for high blood pressure, HCV, and diabetes.  [R148-50].

---

[4]       The record contains the abbreviation "HCV." [R162].  Hepatitis C may be abbreviated as "HCV" or Hepatitis C Virus.  *See* mediLexicon, HCV, http://www.medilexicon.com (last visited February 10, 2008).

4

On May 8, 2000, Plaintiff returned to the Clinic with complaints of knee pain and decreased balance. The treating physician assessed leg pain due to muscle spasm. [R145].

On May 24, 2000, Plaintiff was seen for continued complaints of left leg pain, which included his knee and hip. The treatment notes reflect that Plaintiff's high blood pressure was "still suboptimal" but that his diabetes was "stable." [R143]. On August 22, 2000, Plaintiff returned with complaints of pain in his legs. [R140]. On September 5, 2000, the treating physician prescribed Voltaren[5] for Plaintiff's leg pain. [R138].

A treatment note dated October 12, 2000, reflects that Plaintiff's high blood pressure was "good," his still experienced diabetes, and his HCV had "normal LFT's[6] since 1998." [R136]. In regard to his continued complaints of left leg pain, the treating physician diagnosed "probable neuropathy." [*Id.*].

On January 25, 2001, the treatment note reflects that the Voltaren was working well for Plaintiff's leg pain, his hypertension was under "excellent control," his diabetes

_____

[5]    Voltaren is the brand name for diclofenac sodium and is used to treat signs and symptoms of osteoarthritis, rheumatoid arthritis, and ankylosing spondylitis. R x L i s t . c o m ,    V o l t a r e n ,    I n d i c a t i o n s    a n d    D o s a g e , http://www.rxlist.com/cgi/generic/diclofen_ids.htm., (last visited February 10, 2008).

[6]    "LFT" is an abbreviation for "liver function test." *See* mediLexicon, "LFT," http://www.medilexicon.com (last visited February 10, 2008).

5

was "well controlled" and his HCV was "stable." [R134]. On June 25, 2001, Plaintiff returned for a re-check and his prescriptions for HCTZ[7], lisinopril,[8] nifedipine SR,[9] and Voltaren were refilled. [R133].

On October 13, 2001, Plaintiff was treated for continuing complaints of leg and hip pain. [R132]. The treatment note indicates that the Voltaren no longer eased his pain. He was diagnosed with hypertension - "optimal," diabetes, Hepatitis C, osteoarthritis and a skin rash. [*Id.*]. A visit on February 18, 2002, yielded the same assessment. [*See* R129].

On May 28, 2002, Plaintiff returned to Grady with complaints of hypertension and leg pain. [R126]. His high blood pressure was noted as "suboptimal." He was further assessed as having diabetes and Hepatitis C. [*Id.*]. He had an X-ray of his left

---

[7]       "HCTZ" or hydrochlorothiazide is indicated for the treatment of hypertension. *See* RxList.com, HCTZ, http://www.rxlist.com/script/main/srchcont_rxlist.asp?src=hctz&x=30&y=2, (last visited February 10, 2008).

[8]       "Lisinopril" is a an angiotensin-converting enzyme inhibitor used in the treatment of hypertension. DORLAND'S\ ILLUSTRATED MEDICAL DICTIONARY (28th ed.) at 951.

[9]       "Nifedipine" is a calcium channel blocker used as a coronary vasodilator in the treatment of coronary insufficiency and angina of effort. DORLAND'S\ ILLUSTRATED MEDICAL DICTIONARY (28th ed.) at 1138.

AO 72A
(Rev.8/8
2)

hip. The impression was bilateral avascular necrosis[10] ("AVN") of the femoral heads and collapse of the femoral head on the left with deformity. [R127]. On June 18, 2002, the record reflects that Plaintiff was prescribed Vicodan and a cane/walker was ordered. [R125]. The record further noted that Plaintiff had been prescribed OxyContin. [*Id.*].

On August 26, 2002, the Georgia Department of Human Resources issued a medical statement after Plaintiff applied for Medicaid/Food Stamps. [R123]. The reviewing physician diagnosed avascular necrosis of the left hip and noted that Plaintiff's condition would progressively worsen until total hip replacement was necessary. The physician noted that "[b]ecause of the patient's age, we would like to wait for a few years before performing a total hip. We are now consulting the pain clinic for management." [R123].

On October 1, 2002, Dr. Sondi Moore-Waters performed a consultative examination. [R194]. Dr. Moore-Waters noted that Plaintiff's hip pain began approximately two years prior and an X-ray had shown avascular necrosis of the left hip. Plaintiff complained that the pain was constant when he stood or walked but stated

---

[10]    "Avascular" indicates "not supplied with blood vessels." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (28th ed.) at 165. "Necrosis" is "the sum of the morphological changes indicative of cell death and caused by the progressive degradative action of enzymes; it may affect groups of cells or part of a structure of an organ." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (28th ed.) at 1173.

that he did not experience pain when sitting.  Plaintiff stated that he took morphine, Celebrex, and another medication for pain, the name of which he could not remember, and blood pressure medications, whose names he also could not recall.  His diabetes was controlled with diet.  Dr. Moore-Waters observed that Plaintiff was scheduled for a hip replacement in November at Grady Memorial Hospital.  [*Id*.].

Dr. Moore-Waters further noted that Plaintiff was able to help his wife with the cooking and cleaning.  He required help putting on his shoes but could bathe himself. He claimed he could not stand very long or lift heavy objects.  [*Id*.].  Dr. Moore-Waters observed that Plaintiff walked with a cane and assessed hip pain secondary to avascular necrosis.  She noted that "[a]t this time, he does not have any problem with sitting, but does have problems with standing, walking, lifting and bending. He has no problems with reaching, feeling, grasping, seeing."  [R195].

An X-ray performed on October 1, 2002, revealed "severe deformity of the left femoral head and the adjacent acetabulum with multiple subchondral lucencies thought to represent degenerative cysts.  There are some mixed areas of increased sclerosis in the femoral head.  The findings are degenerative change.  There is mild degenerative change also seen in the right hip."  [R199].  The impression was "advanced

8

degenerative change with deformity of the left hip" and "mild degenerative change, right hip."  [*Id.*].

On October 13, 2002, Plaintiff was admitted to Grady Hospital for left total hip arthroplasty.[11]  [R113-19].  Post-operative X-rays showed the new hip component in a good position.  [R119].  On December 2, 2002, X-rays showed bullet fragments[12] along the medial aspect of the left tibial shaft and mild right hip joint space narrowing and significant sclerotic reaction in the right femoral head.  The reviewing radiologist noted that "these findings could be consistent with avascular necrosis or, possibly osteoarthritis."  [R105].

Plaintiff was seen at Grady on December 9, 2002.  [R112].  He was noted as having high blood pressure, diabetes, avascular necrosis bilateral hips and that he was sent home after hip replacement surgery on a walker but was now using a cane.  The treatment note further states that Plaintiff's pain was "much improved" and he was not taking any pain medication.   His prescriptions were listed as HCTZ, lisinopril,

---

[11]   "Arthroplasty" is defined as "plastic surgery of a joint or of joints; the formation of a movable joint."  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (28th ed.) at 141.

[12]   Plaintiff had suffered a gunshot wound to the abdomen in the 1960s. [R194].

nifediprine, Viagra, and Voltaren.  The treatment notes further reflect that Plaintiff's high blood pressure and diabetes were "well controlled" and that he suffered anemia and avascular necrosis.  [*Id.*].

Plaintiff underwent physical therapy after surgery.  [*See* R110-108].  On February 13, 2003, the physical therapy notes indicate that Plaintiff was "starting to wean off cane."  [R109].  On February 25, 2003, it was observed that Plaintiff arrived without a cane and showed improvement in his gait "unless fatigued."  [R108].

An April 10, 2003, reflects that Plaintiff felt "much better" and was taking the Volteran on an as needed basis.  [R106].

On July 14, 2003, a physician's assistant[13] wrote a letter for Plaintiff stating that he had been a patient at Grady Orthopedics since August 26, 2002, and had been diagnosed with idiopathic avascular necrosis of the left hip resulting in osteoarthritic degenerative joint disease.  [R184].  The letter stated that Plaintiff had undergone total left hip arthroplasty and would require "life-long restrictions/precautions of no hip-flexion beyond 90 degrees; no adduction beyond mid-line of left lower extremity; no

---

[13]     The letter is handwritten and the physician's assistant's name is illegible.  [*See* R184].

10

heavy lifting."[14]  [*Id*.].  The letter further stated that Plaintiff could resume "low impact activities," including "walking, swimming and biking" but that if more "specific limitations of activity . . . for disability reasons" was needed, "patient will need a physical capacities exam. . . ."  [*Id*.].

On July 15, 2003, Dr. Sandra Maryman, a physician at the DeKalb/Grady Heath Center wrote a letter for Plaintiff, in which she stated that she had treated Plaintiff since 1989.  [R185].  She noted that his hypertension and diabetes were well-controlled and that the total left hip replacement in November of 2002 had been "successful in that his pain is much reduced and he is able to walk without a limp."  [*Id*.].  She further noted, however, that "he continues to have pain and will require a right hip replacement at

---

[14]      At the request of this Court during oral argument, the Commissioner filed supplemental authority addressing the meaning of the limitations imposed by the physician assistant of "no hip flexion beyond 90 degrees" and "no adduction beyond mid-line of the left lower extremity."  [*See* Docs. 16, 17, 18].

The Commissioner has provided two articles addressing these limitations, [*see* Doc. 17-2], and a statement from the Agency's medical officer, Dr. Carl Ritner. [Doc. 17-1].  According to Dr. Ritner, the range of motion for hip flexion is zero to 120 degrees and a limitation of 90 degrees would be considered "fairly minimal." [Doc. 17-1 at 2].  An individual with this degree of hip flexion would be able to climb stairs, walk and sit.  [*Id*.].  He further explained that adduction of the left leg is "moving the leg toward the midline of the body, as if to cross the left leg over the right."  [*Id*.]. The articles provided by the Commissioner are in accord with Dr. Ritner, except to the extent that the article by Dr. Judith K. Parker, [Doc. 17-2], asserts that normal hip range for flexion is 135 degrees.

11

AO 72A
(Rev.8/8
2)

some time in the future." [*Id.*].  She opined that Plaintiff could not return to his former work of brick masonry and was "unable to lift heavy objects, bend and stoop like he did prior to his hip problems." [*Id.*].  She concluded that Plaintiff "should be able to work at another type of job that did not require the physical activity that laying brick requires." [*Id.*].

On August 19, 2003, Plaintiff was seen at Grady for a follow-up for hypertension and diabetes.  [R104].  The treatment notes reflect that both conditions were well-controlled, his Hepatitis C was stable, and he had avascular necrosis and a history of anemia.  Regarding his left hip, the treating physician wrote "hip stiff overnight otherwise ok."  Regarding the right, he noted "hip pain at this time is minimal. Unable to bend over and tie shoes." [*Id.*].  The physician further noted that Plaintiff "want[ed] to exercise.  Now on stationary bike 30 minutes x 4-5 day, wants to go to water aerobics." [*Id.*].  He continued to take Volteran on an as needed basis.  [*Id.*].  Plaintiff received essentially the same assessment during a return visit on February 16, 2004. His hypertension and diabetes were under "excellent control," and he was assessed with right hip avascular necrosis.  [R102].

On May 22, 2004, Plaintiff was seen for high blood sugar which registered at 262.  The treatment notes stated that he should "cut sweets." [R101].  Plaintiff was

AO 72A
(Rev.8/8
2)

seen again at Grady for hypertension and diabetes in October 2004. [R94]. On October 18, 2004, his hypertension and Hepatitis C virus levels were assessed as stable and diabetes as controlled. [R208].

On February 7, 2005, Plaintiff returned for a re-check. He was assessed as having hypertension, diabetes and avascular necrosis. [R207]. On March 30, 2005, Plaintiff returned to Grady with elevated blood sugar. [R206]. On April 8, 2005, the treatment note recorded that Plaintiff had experienced uncontrolled blood sugar during the prior visit and stated that Plaintiff was feeling better. [R205].

Plaintiff returned the Clinic on April 13, 2005. [R204]. The treatment notes state that Plaintiff felt better and exercised on a treadmill thirty minutes a day, lifted weights and used a stationary bicycle. Plaintiff complained, however, that his left hip was painful when he lifted his leg. [R204].

C.    *Physical Residual Functional Capacity Assessment*

On January 7, 2003, Dr. Irvin Blumenthal, a non-examining state agency physician, conducted a residual functional capacity evaluation. [R186-193]. Dr. Blumenthal found that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds. He could sit and stand and/or walk for a total of about six hours in an eight hour workday. [R187]. He further found that Plaintiff could only

13

occasionally stoop, kneel, crouch, and crawl.  [R188].  He found Plaintiff's subjective

complaints "partially credible."  [R191].

> D.     *Evidentiary Hearing Before the Social Security ALJ*

Plaintiff was forty-nine years old at the time of the hearing.  He testified that he

was married and completed the tenth grade.  [R229].  He never received any additional

vocational training. [R230].  Plaintiff testified he had previous work experience as a

self-employed sales person and a brick mason but that he had not worked since May 20,

2002.  [*Id.*].

Plaintiff testified that he had his left hip replaced in November 2002 and that he

was scheduled to have surgery on his right hip some time in the future.  [R231-32].  His

diabetes was controlled by oral medication and diet.  [R233].  When asked whether his

diabetes caused any problems, Plaintiff responded that although he had dizziness and

lightheadedness "a couple of times," he had not experienced any episodes recently.

[*Id.*].  He testified that his diabetes was "pretty much . . . under control."  [R235].

Plaintiff also testified that his Hepatitis C was "under control."  [R237].

The ALJ inquired whether Plaintiff used a cane or walker "very often," to which

Plaintiff responded "[n]ot very often . . . sometime when I'm stiff."  [R233-34].

Plaintiff testified that if he sat in one place for thirty minutes or more, his hip would

14

become stiff and he would need to stand up and stretch out.  [R234].  Plaintiff further testified that if he stood for 30 minutes in the same place he would need to move or sit down.  [R235].  Plaintiff testified that he could bend at the waist.  [*Id.*].

Upon examination by his attorney, Plaintiff testified that sometimes his left hip was stiff at night but "as the day progress[es] he gets better."  [R239].  Plaintiff stated that he needed to do exercises for his left hip for one and one half to two hours each morning so that it did not become stiff.  [R240].  He testified that his right hip was stiff as well and he could not walk for long periods of time.  [R241].  He stated that he experiences some nausea from the Voltaren.  [R242].  Plaintiff testified that if he sat for an hour he would need to stand up and that when he took his medication he did not have any "trouble" with his right hip.  [R244].

Plaintiff further testified that he did not need to use his cane everyday but only on certain occasions, such as when the weather was bad or if he was experiencing pain, but he did not use it on a "regular basis."  [R245].  He claimed that he experiences difficulty balancing, such that walking over a curb might be difficult.  [R246].

## III.   ALJ'S FINDINGS OF FACT

The ALJ made the following findings of fact:

1. The claimant has not performed substantial gainful activity since the alleged disability onset date.

2. The claimant met the disability insured status requirements of the Act on May 20, 2002, the date claimant stated he became unable to work, and continued to meet them through December 31, 2003, but not thereafter.

3. The medical evidence establishes that the claimant has these severe, medically determinable impairments: status post left hip replacement for vascular necrosis; right hip necrosis; diabetes mellitus; hypertension; and hepatitis C.

4. Claimant does not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 CFR 404, Appendix 1, Subpart P.

5. The claimant has an underlying medically determinable impairment that could possibly cause some pain or other symptoms, but claimant's allegations with regard to the severity and functional consequences of the symptoms are not fully credible. (SSR 96-7p).

6. The claimant has the residual functional capacity to perform light work (20 CFR 404.1545 and 416.945). Claimant has the ability to lift/carry 20 pounds occasionally, 10 pounds frequently, stand and/or walk 6 hours with breaks during an eight hour workday, and sit continuously with breaks every two hours for 6 hours in an eight hour workday.

7. The claimant is unable to perform his past relevant work as a brick mason.

8. The claimant . . . will be turning age 50 within a few weeks. . . which is defined as an individual closely approaching advanced age (20 CFR 404.1563 and 416.963).

16

9.    The claimant has a tenth grade education (20 CFR 404.1564 and 416.964).

10.   The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work functions of other work (20 CFR 404.1568 and 416.968).

11.   Based on the exertional capacity for light work, and the claimant's age, education and work experience, 20 CFR Sections 404.1569, 416.969 and 20 CFR Rule 202.10 (upon attaining age 50) and 202.17 (for the period prior to age 50) in Table 2, Appendix 2, Subpart P, supports a conclusion of "not disabled."

12.   Claimant's capacity for the full range of unskilled light work has not been significantly compromised by his nonexertional limitations.  Accordingly, using the above cited rule as framework for decisionmaking, the claimant is not disabled.

13.   The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404-1520(f) and 416.920(f)).

[R15-16].

After reviewing the medical history, the ALJ noted that Plaintiff's treating physician stated that as of July 2003, Plaintiff's hypertension and diabetes mellitus were well-controlled and his hip replacement surgery had been successful.  He further noted her opinion that Plaintiff could work at a job not requiring the "physical activity of brick-laying."  [R12].  The ALJ observed that treatment notes through April 2005 describe Plaintiff's hepatitis as "stable."  [R13].

AO 72A
(Rev.8/8
2)

The ALJ found that although Plaintiff had a "medically determinable impairment or combination of impairments that could possibly produce some pain or other symptoms," the alleged pain "exceed[ed] the limitations reasonably expected from the medical findings." [R13]. The ALJ pointed to claimant's treating and examining physicians' opinions that he could work as evidence that Plaintiff's subjective complaints were not fully credible. He observed that Plaintiff had no side effects of "prolonged and/or chronic pervasive pain" such as weight loss and diffuse atrophy or muscle-wasting and that he told the consultative examiner prior to his surgery that he had no difficulty sitting. [R13-14].

The ALJ further found that Plaintiff was not subject to severe nonexertional limitations that would significantly narrow the range of light work. [R15]. Applying the Medical-Vocational Guidelines ("the Grids"), the ALJ concluded that based on Plaintiff's age, education and vocation and residual functional capacity, Plaintiff was not disabled. [R14-15].

## IV.   STANDARD FOR DETERMINING DISABILITY

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

18

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3).

The burden of proof in a Social Security disability case is divided between the claimant and the Commissioner. The claimant bears the primary burden of establishing the existence of a "disability" and therefore entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a). The Commissioner uses a five-step sequential process to determine whether the claimant has met the burden of proving disability. *See* 20 C.F.R. § 404.1520(a); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The claimant must prove at step one that he is not undertaking substantial gainful activity. *See* 20 C.F.R. § 404.1520(b). At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments which significantly limits his ability to

19

perform basic work-related activities. *See* 20 C.F.R. § 404.1520(c). At step three, if the impairment meets one of the listed impairments in Appendix 1 to Subpart P of Part 404 (Listing of Impairments), the claimant will be considered disabled without consideration of age, education and work experience. *See* 20 C.F.R. § 404.1520(d). At step four, if the claimant is unable to prove the existence of a listed impairment, he must prove that the impairment prevents performance of past relevant work. *See* 20 C.F.R. § 404.1520(e). At step five, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education and past work experience to determine whether the claimant can perform other work besides past relevant work. *See* 20 C.F.R. § 404.1520(f). The Commissioner must produce evidence that there is other work available in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must prove an inability to perform the jobs that the Commissioner lists. *Doughty*, 245 F.3d at 1278 n.2.

If at any step in the sequence a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). Despite the shifting of burdens at step five, the overall burden rests upon the claimant to prove that he is unable to engage in any

20

substantial gainful activity that exists in the national economy. *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983).

## V.     SCOPE OF JUDICIAL REVIEW

The scope of judicial review of a denial of Social Security benefits by the Commissioner is limited. Judicial review of the administrative decision addresses three questions:  (1) whether the proper legal standards were applied; (2) whether there was substantial evidence to support the findings of fact; and (3) whether the findings of fact resolved the crucial issues. *Fields v. Harris*, 498 F.Supp. 478, 488 (N.D. Ga. 1980). This Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  If supported by substantial evidence and proper legal standards were applied, the findings of the Commissioner are conclusive. *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11thCir. 1990); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  "Substantial evidence" means more than a scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be enough to justify a refusal to direct a

AO 72A
(Rev.8/8
2)

verdict were the case before a jury.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hillsman*, 804 F.2d at 1180; *Bloodsworth*, 703 F.2d at 1239.  "In determining whether substantial evidence exists, [the Court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  In contrast, review of the ALJ's application of legal principles is plenary.  *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Walker*, 826 F.2d at 999.

## VI.   CLAIMS OF ERROR

Plaintiff contends that the ALJ's decision was erroneous in four ways: (1) by not correctly applying the Eleventh Circuit pain standard; (2) by not finding in his residual functional capacity evaluation that Plaintiff had nonexertional impairments; (3) by relying on the Social Security grids instead of hearing vocational expert testimony; and (4) by not making a determination as to whether Plaintiff is entitled to a closed period of disability.

22

## VII.   DISCUSSION

### A.   *The ALJ's Application of the Pain Standard*

#### 1.   *The Pain Standard*

In evaluating a claimant's testimony regarding his pain or other subjective symptoms, the Eleventh Circuit's pain standard requires: "'(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If a claimant's subjective testimony is supported by the medical evidence, he satisfies the pain standard and may be found disabled.  *Holt*, 921 F.2d at 1223.

The assessment of a claimant's credibility about pain and other symptoms and their effect on the ability to function must be based on a consideration of all of the evidence in the case record.  20 C.F.R. § 404.1529; SSR 96-7p.  If the ALJ decides to discredit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Foote*, 67 F.3d at 1561-62 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545

AO 72A
(Rev.8/8
2)

(11th Cir. 1988)); *see also* 20 C.F.R. § 404.1529; SSA Ruling 96-7p; *Kieser v. Barnhart*, 222 F. Supp. 2d 1298, 1310 (M.D. Fla. 2002).  A broad statement rejecting a claimant's credibility is insufficient.  *See Dyer*, 395 F.3d at 1210.  A reviewing court will not disturb a clearly articulated credibility finding if there is substantial supporting evidence in the record.  *Kieser*, 222 F. Supp. 2d. at 1310.

Plaintiff argues that the ALJ committed legal error by only applying two parts of the pain standard.  [Doc. 14 at 10].  Plaintiff concedes that the ALJ applied the first part and third parts of the pain standard when he found that Plaintiff had an underlying medically determinable impairment but that the allegations exceeded the limitations reasonably expected from the medical findings.  [*Id.* at 10-11].  Plaintiff argues, however,  the ALJ never discussed the second part of the pain test.  Plaintiff contends that if the ALJ had applied and subsequently found that Plaintiff met the second part of the pain standard, he would have been found disabled due to pain.  Plaintiff argues that this case should be remanded for a new hearing to consider the second prong of the pain standard.

The Commissioner responds that the ALJ properly evaluated Plaintiff's subjective allegations of pain.  He argues that the ALJ extensively discussed the objective medical findings and Plaintiff's daily activities when weighing Plaintiff's

AO 72A
(Rev.8/8
2)

subjective complaints of pain.  The Commissioner contends that, under *Wilson v. Barnhart*, 284 F.3d 1219 (11ᵗʰ Cir. 2002), the ALJ's discussion of the objective medical evidence and Plaintiff's daily activities was sufficient evidence that the ALJ properly applied the pain standard.  [Doc. 15 at 11].

In *Wilson*, the ALJ reviewed the claimant's medical records and daily activities, noting that he had completed two college degrees and concluded that "'there is no objective medical evidence confirming the severity of the alleged symptoms arising from that condition(s) or that the objectively determined medical condition(s) were of such severity that they could reasonably be expected to give rise to the alleged symptoms.'" *Wilson*, 284 F.3d at 1223.  The ALJ then found the claimant not disabled. [*Id.*].  The district court concluded that the ALJ had not properly applied the pain standard, but the Eleventh Circuit disagreed.  After setting out the pain standard, the *Wilson* Court found that "[a]lthough the ALJ does not cite or refer to the language of the three-part test in *Holt*, his findings and discussion indicate that the standard was applied."  *Id.* at 1225.  It observed that the ALJ cited to § 404.1529, "which contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part pain standard."  *Id.* at 1226.  Thus, the *Wilson* Court concluded that it was "clear that the ALJ applied this Circuit's pain standard."

25

*Id.* The court further noted that the ALJ discussed the evidence that was "inconsistent" with the claimant's alleged inability to work, including attending college and that, other than receiving vitamin B12 shots, the claimant did not receive significant medical treatment during the applicable period. *Id.* The court ultimately concluded not only that the ALJ correctly applied the law but that the ALJ's decision to reject the claimant's subjective allegations of pain was supported by substantial evidence. *Id.*

In the instant case, this Court also finds that it is clear that the ALJ properly applied the Eleventh Circuit pain standard. Like the *Wilson* ALJ, the ALJ here cited 20 C.F.R. § 404.1529, as well as SSR 96-7p, the applicable regulations for assessing Plaintiff's pain. *Wilson*, 284 F.3d at 1226.[15] The ALJ also extensively discussed the objective medical evidence. He noted that Plaintiff suffered avascular necrosis of the hips, including collapse of the femoral head on the left, but that after his surgery, Plaintiff was weaning himself off use of a cane. [R12]. He further noted that Plaintiff's hypertension and diabetes were well-controlled, and his hepatitis was stable. [R12-13]. He also observed that after Plaintiff's surgery, his treating physician opined that Plaintiff would be able to return to work which did not require the physical activity of brick-laying. He noted the orthopedic physician assistant's statement that Plaintiff

---

[15]     Social Security Ruling 96-7p contains nearly identical language to that of the Eleventh Circuit pain standard. *Compare* SSR 96-7p *with Dyer*, 395 F.3d at 1210.

was not capable of hip flexion beyond 90 degrees and no adduction beyond the mid line of the left lower extremity.  [*Id.*].  The ALJ further stated that Plaintiff did not exhibit any weight loss or diffuse atrophy or muscle wasting, conditions which are recognized side effects of prolonged pain.  [R13].  The ALJ also reviewed Plaintiff's daily activities.  Plaintiff stated that he was able to cook, shop, do laundry, wash dishes, take walks, drive, visit friends and relatives and worked out daily.  [R13-14].

The ALJ's citation to 20 C.F.R. § 404.1529 and SSR 96-7p and his discussion of the objective medical evidence and other matters including Plaintiff's daily activities, shows that the ALJ applied the second prong of the pain standard. Accordingly, the undersigned finds that the ALJ did not err in his application of the pain standard.  Remand on this ground is not warranted.

B.      *Plaintiff's Nonexertional Impairments and the ALJ's Use of the Grids* [16]

Plaintiff next claims that the ALJ erred by relying on the grids to make a non-disability determination at step five of the sequential process.  Plaintiff argues that the ALJ should not have used the grids to determine whether he was disabled because he had nonexertional impairments of pain, the inability to bend and stoop, and requires the use of a cane to ambulate, all of which limited his work activities.  Plaintiff contends

_____

[16]      The Court considers Plaintiff's second and third arguments together.

27

that the ALJ needed the assistance of a vocational expert ("VE") to determine whether Plaintiff could perform a full range of activities at a light exertional level. [Doc. 14 at 13-18].

The Commissioner responds that Plaintiff's profile fit within the matrix of the grids, thereby justifying the ALJ's use of the grids. [Doc. 15 at 13]. The Commissioner next argues that Plaintiff's alleged nonexertional impairments did not prevent the ALJ from using the grids because under Social Security Ruling ("SSR") 85-15, the grids can be used when nonexertional impairments, such as Plaintiff's, only have little or no effect on working ability. [*Id.* at 14-15]. The Commissioner also argues that the ALJ's credibility determination showed that Plaintiff's statements of pain were not fully credible and, thus, he properly did not consider Plaintiff's allegations of pain as a significant nonexertional impairment. [*Id.*].

The Medical-Vocational Rules ("grids") are predicated on an individual having an impairment that manifests itself by limitations in the strength requirements of a job. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e). The Eleventh Circuit has described the grids as follows:

> The grids are a series of matrices which correlate a set of variables - - the claimant's residual functional capacity (*i.e.*, the ability, despite impairments, to do sedentary, light, etc. work), age, educational

28

> background, and previous work experience.  Upon the entry of a set of
> these variables into the appropriate matrix a finding of disabled or not
> disabled is rendered.

*Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985).  The Commissioner is directed to apply the grids when a claimant: (1) is not performing substantial gainful employment; (2) has a severe medically determinable impairment that prevents the claimant from performing past relevant work; and (3) the findings of fact concerning the claimant's vocational factors and RFC is the same as the corresponding criterion of a grid.  20 C.F.R. § 404.1569; 20 C.F.R. Pt. 404 Subpt. P, App 2 § 200.00(a).

The grids will not apply when an individual has combined exertional limitations[17] and nonexertional limitations,[18] "unless there is a rule that directs a conclusion that [the claimant is] disabled based upon [his] strength limitations;

---

[17]      "Exertional limitations affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling."  *Phillips v. Barnhart*, 357 F.3d 1232, 1242 n.11 (11th Cir. 2004) (citing SSR 96-4); 20 C.F.R. § 404.1569a(b).

[18]      "Nonexertional limitations or restrictions affect an individual's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands."  *Phillips*, 357 F.3d at 1242 n.11 (citing SSR 96-4); 20 C.F.R. § 404.1569a(c) (providing the following examples of nonexertional limitations: difficulty functioning because of depression; difficulty maintaining concentration or attention; and difficulty understanding or remembering detailed instructions).

otherwise the [grids] provide a framework to guide [the] decision."   20 C.F.R. § 404.1569a(d); *see also* 20 C.F.R. Pt. 404 Subpt. P, App 2 § 200.00(e)(2); SSR 83-14. Thus, the grids may still be applicable when there are exertional and nonexertional limitations.  *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

"'[N]on-exertional limitations can cause the grid to be inapplicable only when the limitations are severe enough to prevent a wide range of gainful employment at the designated level.'"   *Id.* (quoting *Murray v. Heckler*, 737 F.2d 934, 935 (11th Cir. 1984)); *Martin v. R.R. Ret. Bd.*, 935 F.2d 230, 234 (11th Cir. 1991)[19] (citing *Francis v. Heckler*, 749 F.2d 1562, 1566-67 (11th Cir. 1985) ("Exclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills.").   The ALJ must "'make a specific finding as to whether the nonexertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.'" *Welch v. Bowen*, 854 F.2d 436, 439 (11th Cir. 1988) (quoting *Sryock*, 764 F.2d at 836).

---

[19]     "Because '[t]he provisions of the Railroad Retirement Act are so closely analogous to those of the Social Security Act . . . regulations and cases interpreting the latter are applicable to the former.'"  *Martin*, 935 F.2d at 234 n.4 (quoting *Elam v. R.R. Retirement Board*, 921 F.2d 1210, 1213 (11th Cir. 1991)).

30

Thus, the grids are not used when: (1) "the claimant has a nonexertional impairment[20] that significantly limits his basic work skills[21]"; or (2) "the claimant cannot perform a full range of employment at the appropriate level of exertion.[22]" *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996); *Phillips*, 357 F.3d at 1242.   In such a situation, the ALJ should rely on a VE's testimony to determine whether Plaintiff can perform any jobs in the national economy.   *Wolfe*, 86 F.3d at 1077-78; *see also* 20 C.F.R. § 404.1567(e) (indicating that a VE may be used when there is an issue of "whether a [claimant's] work skills can be used in other work and the specific occupations in which [the skills] can be used.").

---

[20]   The Court notes that case law uses exertional and nonexertional "impairments" nearly interchangeably with exertional and nonexertional "limitations." *See, e.g.*, *Phillips*, 357 F.3d at 1242 n.11 ("There are two types of impairments at issue in [claimant's] case: exertional limitations and nonexertional limitations."). The Commissioner defines a nonexertional impairment as "one which is medically determinable and causes a nonexertional limitation of function." SSR 85-15. Thus, if there is a nonexertional limitation, a claimant will have a nonexertional impairment.

[21]   Nonexertional impairments significantly limit basic work skills when they "prohibit a claimant from performing 'a wide range' of work at a given work level." *Phillips*, 357 F.3d at 1243; SSR 85-14 ("Nonexertional impairments may or may not significantly narrow the range of work a person can do."). A VE must testify when the nonexertional impairments significantly limit basic work skills. *Id.*

[22]   "Full range of employment" is defined "as being able to do 'unlimited' types of work at the given exertional level." *Phillips*, 357 F.3d at 1242.

31

The Court finds that substantial evidence supports the ALJ's finding that Plaintiff's alleged nonexertional impairments were not sufficiently severe to erode the occupational base for light work and, therefore, that the ALJ did not err by relying exclusively on the grids.

First, as he was required to do, the ALJ specifically found that Plaintiff's nonexertional impairments were not severe enough to preclude a wide range of light work:

> in view of the medical evidence, age, education, vocational and residual functional capacity indicated, Rule 202.10 (upon attaining age 50) and 202.17 (for the period prior to age 50) in Table 2 of Appendix 2 are applicable as guidelines to support a finding of not disabled. Claimant is not subject to severe nonexertional limitations that would tend to significantly narrow the range of alternative jobs contemplated under the foregoing rule.

[R15].  *See Welch*, 854 F.2d at 439 (when nonexertional limitations are alleged, the ALJ must make specific findings as to whether these alleged impairments preclude a wide range of work at the stated exertional level); *accord Rease v. Barnhart*, 422 F. Supp. 2d 1334, 1370 (N.D. Ga. 2006).

Plaintiff alleges nonexertional impairments of pain, an inability to bend and stoop, and the assistance of a cane to ambulate.  The Court addresses each of alleged nonexertional impairments in turn.

32

1.      Pain

"Pain is a nonexertional impairment." *Foote,* 67 F.3d at 1559; *Walker,* 826 F.2d at 1003.  However, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's pain, or the corollary impairment of inability to concentrate due to pain, did not constitute a nonexertional impairment sufficiently severe so as to significantly reduce the range of light, unskilled jobs.

Although Plaintiff asserts that his pain affected his ability to concentrate which the ALJ should have considered a severe nonexertional impairment, [Doc. 14 at 14], the record contains no medical or other evidence that Plaintiff has ever alleged that he experienced pain such that it interfered with his ability to concentrate.  Indeed, Plaintiff's testimony at the administrative hearing mainly consisted of complaints of stiffness and an inability to bend or squat.  [*See* R240-41].

Moreover, the Court agrees that the ALJ's evaluation of Plaintiff's credibility in regards to his allegations of pain adequately addresses whether pain should be considered a sufficiently severe nonexertional impairment so as to preclude a wide range of work at the light exertional level.  *See Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990) (implying that a proper credibility finding would support formulation of claimant's RFC); *Johnson v. Barnhart*, 268 F. Supp. 2d 1317, 1329 (M.D. Fla.

AO 72A
(Rev.8/8
2)

2002) (proper credibility determination can form basis for determination of severity of nonexertional impairment).

In making the credibility determination, the ALJ noted that Plaintiff's treating physician found that Plaintiff was able to work at jobs that did not require physical activity such as that required by brick laying, and that he only takes anti-inflammatory medication. [R12, 241-42]. *See Phillips*, 357 F.3d at 1240-41 (ALJ may give treating physician's opinion substantial weight); *Lewis,* 125 F.3d at 1440; *see also Harwell v. Heckler*, 735 F.2d 1292, 1292 (11th Cir. 1984) (lack of regular use of potent pain medication substantial evidence supporting ALJ's determination that claimant was not disabled); *Falcon v. Heckler*, 732 F.2d 827, 832 (11th Cir. 1984) (lack of strong pain medication substantial evidence pain is not disabling). He also observed that Plaintiff did not exhibit side effects of prolonged chronic pain. [R13]. *See Edwards v. Barnhart*, 319 F. Supp. 2d 1283, 1290 (N.D. Ala. 2004) (atrophy recognized as evidence of pain). While not dispositive of the issue of disability, the ALJ may consider a claimant's daily activities when determining the credibility of subjective allegations of pain. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1338 (M.D. Ala. 2001). Here, the ALJ properly considered, in conjunction with other evidence, Plaintiff's daily activities, which

34

included cooking, doing laundry, washing dishes, taking walks, driving, and working out daily.  [R13-14].

The Court finds that the ALJ clearly articulated specific reasons for finding that Plaintiff's allegations of pain were not fully credible, and these reasons are supported by substantial evidence.  Thus, the ALJ properly relied on these reasons when determining that Plaintiff's alleged pain, or inability to concentrate due to pain, was not severe enough to significantly limit performance of a full range of light work. Accordingly, the ALJ's reliance on the grids was not inappropriate.

2.      *Limited Ability to Stoop or Bend*

The Court further finds that a limited ability to stoop or bend would not significantly affect Plaintiff's ability to perform light work and, therefore, Plaintiff's assertion that he had only a limited ability to engage in these activities does not undermine the ALJ's conclusion that he did not suffer any nonexertional impairments, such as would erode the light occupational base.

Social Security Ruling 85-15 provides:

*Stooping, kneeling, crouching, and crawling* are progressively more strenuous forms of bending parts of the body, with crawling as a form of locomotion involving bending. Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are

35

involved.  *If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact*.  However, because of the lifting require for most medium, heavy, and very heavy jobs, a person must be able to stoop frequently (from one-third to two-thirds of the time); inability to do so would substantially affect the more strenuous portion of the occupational base.

SSR 85-15 (emphasis supplied).

Plaintiff contends that Dr. Maryman found that Plaintiff could not bend and stoop "like he did prior to his hip problems" and that Dr. Moore-Waters also noted "problems" with bending. [Doc. 14 at 14-15].  Neither doctor, however, found that Plaintiff could not bend or stoop at all.  Rather, Dr. Maryman concluded that Plaintiff "should be able to work at another type of job that did not require the physical activity that laying brick requires." [R185].  Bricklaying has been classified at the medium or heavy exertional level, which unlike light work, requires the ability to stoop frequently. *See id*; *Miranda v. Sec'y of Health & Human Svcs*., Civ. No. 92-1468 (HL), 1993 WL 548821, at * 1 (D. Puerto Rico Dec. 3, 1993); *Stone v. Sec'y of Health & Human Svcs*., 823 F.2d 553 at * 2 (6th Cir. 1987) (unpublished table decision); *Wiatt v. Shalala*, No. 93-6329-HO, 1994 WL 773440 (W.D. Mo. Oct. 11, 1994).  Moreover, the RFC evaluation conducted by the non-examining state agency physician found that Plaintiff could occasionally stoop, kneel, crouch, and crawl.  [R188].

36

Plaintiff has not challenged as incorrect either his treating physician's or the reviewing physicians' RFCs, evidence upon which the ALJ explicitly relied. [*See* R14]. This evidence constitutes substantial evidence that he was able to occasionally bend and stoop, as required for light work, and contradicts a conclusion that he had a reduced ability to perform these activities significantly limiting the range of available light jobs. Thus, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's limitations in bending and stooping did not significantly impact the range of light work. Therefore, the ALJ's reliance on the grids rather than on testimony of a VE was not error.

### 3.     *Need for a Cane to Ambulate*

Plaintiff next argues that the use of a cane affected his ability to carry objects and, therefore, significantly eroded the occupational base for light work, thus requiring the testimony of a VE. [Doc. 14 at 16]. The Commissioner responds that the objective medical evidence did not support Plaintiff's contention that he required a cane to ambulate and, therefore, it need not have been considered as a nonexertional impairment. [Doc. 15 at 15].

Although the inability to walk without an assistive device is considered a nonexertional impairment, *see Walker*, 826 F2d at 1003, if the alleged nonexertional

37

AO 72A
(Rev.8/8
2)

impairment if found to be minor or not credible, the ALJ may properly rely on the grids, rather than eliciting testimony from a VE.  *See Martin*, 935 F.2d at 234 (finding that claimant's "minor exertional impairments of the neck and lower back" did not preclude use of the grids); *Francis v. Heckler*, 749 F.2d 1562, 1566-67 (11th Cir. 1985) (ALJ may rely on grids when allegation of nonexertional impairment found not to be credible).

In this case, the Commissioner is correct that the objective medical evidence does not support Plaintiff's assertion that he required a cane to walk.  While Plaintiff initially used a walker, and then a cane, after his surgery in November 2002, [*see* R125], his physical therapist reported that by February 2003, he was "starting to wean off cane," [R109], a fact also noted by the ALJ.  [*See* R12].  Plaintiff himself testified that he did not use a cane "very often," [R233], and "not frequently" and not "on a regular basis."  [R245].  Thus, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff did not require a cane to ambulate and, therefore, reliance on the grids was not legal error.

### 4.    Conclusion

The Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's alleged nonexertional impairments of pain and/or the inability to concentrate

38

due to pain, the inability to bend and/or stoop, and the need for a cane were not sufficiently severe so as to significantly limit his ability to perform light work and, therefore, significantly diminish the range of light jobs available to Plaintiff. Accordingly, the Court concludes that the ALJ did not commit legal error by relying exclusively on the grids rather than requiring testimony from a VE.

### C.    Closed Period of Disability

Plaintiff argues that the ALJ erred by not considering whether he was entitled to a closed disability for the approximately sixteen to eighteen months following his surgery.  Plaintiff argues that he testified at the hearing that he used a walker for eight to nine months after his surgery and a cane for the next eight to nine months.  Plaintiff argues that during this time period he would not have been able to carry any weight at all, and, therefore, he would have been unable to perform light work.  [Doc. 14 at 19].

The Commissioner responds that there is no objective medical evidence to support Plaintiff's claim that he used a walker and cane for such an extended period of time and, therefore, that substantial evidence supports the ALJ's finding that Plaintiff did not provide sufficient evidence to show he was entitled to any period of disability.  [Doc. 115 at 16-17].

39

AO 72A
(Rev.8/8
2)

An individual is considered disabled for purposes of disability benefits if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Thus, Plaintiff must show that he required a walker and/or a cane to ambulate for at least twelve months following his surgery in order to be considered disabled under the statute.

The medical evidence of record does not support Plaintiff's assertion that he was disabled for the sixteen to eighteen months following his surgery. Plaintiff underwent hip replacement on November 11, 2002. [R113]. The record indicates, however, that while Plaintiff was sent home with a walker following his surgery, by December 9, 2002, he was using a cane. [R112]. Plaintiff's physical therapist noted on February 13, 2003, that Plaintiff was beginning to "wean off" using his cane, [R109], and on February 25, 2003, that he arrived without his cane. [R108]. Moreover, in July 2003, Plaintiff's treating physician opined that the surgery was successful and Plaintiff walked without a limp. [R185]. The Commissioner also correctly points out that neither the letter from the physician's assistant nor the one from Dr. Maryman mention that Plaintiff required use of a cane. [*See* R184-85].

40

The Court agrees with the Commissioner that the ALJ implicitly discredited Plaintiff's testimony regarding his use of a cane when the ALJ found that Plaintiff did not qualify for *any* period of disability during the applicable time period.  [*See* R16]. *See Osborn v. Barnhart*, 194 Fed. Appx. 654, 666 (11th Cir. 2006) (no error if the ALJ's credibility determination was implicit in the rejection of the claimant's testimony); *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) ("Although this circuit does not require an explicit finding as to credibility, as *Allen* indicates, the implication must be obvious to the reviewing court") (citing *Allen v. Schweiker*, 642 F.2d 799 (5th Cir. 1981)).

This Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]."  *Phillips,* 357 F.3d at 1240 (quoting *Bloodsworth,* 703 F.2d at 1239).  Because, as discussed above, the objective medical evidence in this case indicates that Plaintiff appeared to be able to ambulate without the assistance of a cane approximately three months after his surgery, the Court finds that substantial evidence supports the ALJ's implicit finding that Plaintiff's testimony regarding his use of a cane for these months was not credible and, therefore, that he was not under a disability at any time during the applicable period.  *See Wilson*,

41

AO 72A
(Rev.8/8
2)

284 F.3d at 1226-27 (record must support claimant's assertion that condition continued at a disabling level for a period exceeding twelve months).

## VIII.  CONCLUSION

In conclusion, the Commissioner's final decision denying benefits to Plaintiff is **AFFIRMED**.  The Clerk is **DIRECTED** to enter final judgment in favor of the Commissioner.

Let a copy of this Order be served upon counsel for the parties.

**IT IS SO ORDERED**, this the 21st day of February, 2008.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

42